Hefner vs. Hesse and Vergez.

## No. 6525.

### A. HEFNER VS. S. HESSE AND H. VERGEZ.

The sureties on an injunction bond can not be held liable for the amount of the judgment enjoined, unless it be proved that the judgment was lost in consequence of the injunction.

In seizing property under a *fieri facias*, encumbered with liens and mortgages, the sheriff should take note of them, and allow for them, in estimating the amount of property he should seize to satisfy his execution.

The sheriff is presumed, as to any official act, to have done his duty, and who alleges that he has made an excessive levy must prove it.

An injunction will not lie on account of an excessive seizure under a *fieri facias*.

The amount of the bond given for the release of property seized under execution, is not in the discretion of the court. It is fixed by law at one-half over the estimated value of the property seized; See Revised Statues, section 3411.

A judgment debtor who neglects to point out property to satisfy the execution against him, after having been duly notified to do so by the sheriff, can not afterward enjoin his creditor from seizing and selling his immovables before exhausting his movable property.

When it appears that an injunction has not been wantonly issued, but that plaintiff has resorted to it under a mistaken but honest belief that he was entitled to do so, only such damages will be allowed on its dissolution as cover the court costs, and counsel fees of defendant.

APPEAL from the Fifteenth Judicial District Court, parish of La-fourche. *Beattie*, J.

*Goode & Winder* and *J. S. Goode*, for plaintiff and appellant.

*E. W. Blake* and *Clay Knobloch*, for defendants.

The opinion of the court was delivered by

DEBLANC, J.  On the sixth of June, 1873, Augustus Hefner obtained judgment against Simon Hesse and Hector Vergez for $4977.56, with interest thereon at the rate of eight per cent per annum from the twenty-eighth of December, 1872.

From that judgment a devolutive appeal was taken by said Hesse and Vergez, and on the ninth of November, 1874, the judgment appealed from was confirmed by the Supreme Court.

Under that judgment three writs of *fieri facias* issued on the same day—one directed to the sheriff of Assumption, another to the sheriff of Lafourche, and the third to the sheriff of Terrebonne.

To satisfy those writs, each of said sheriffs seized from Hesse and Vergez a plantation, with the growing crops, the mules, implements of husbandry, the sugar, molasses, corn, hay, carts, shingles, and cord wood thereon being.

On the seventeenth of November, 1873, Hesse and Vergez enjoined those seizures.

Their injunction was partly maintained and partly dissolved by the lower court. From the decree of said court Hefner has appealed.

On the nineteenth of November, 1873, in a petition addressed to the district judge, Hesse and Vergez alleged that the property then seized

was worth one hundred thousand dollars, and was far more than suffi-
cient to satisfy their creditor's judgment. They swore to the truth of the
facts alleged by them, and prayed:

First—That said seizure be reduced to a reasonable amount.

Second—To be allowed, after the reduction, to retain the property
seized by furnishing bond to the sheriff of the parish of Lafourche for
such sum as the court would deem just.

Third—That, on said bond being furnished, the sheriffs of Lafourche,
Terrebonne, and Assumption be ordered to return into their possession
the property held under the three writs.

On the same day, the nineteenth of November, 1873, the district judge
ordered "that the property seized be released to defendants on their
furnishing bond in accordance with law in the sum of eight thousand
dollars."

The bond referred to in that order was furnished—this we learn from
the parties' declaration—but, as said bond is not in evidence, we know
not to whom and on what condition it was made payable. We can only
presume, and we do, that, in form and in substance, it is the bond men-
tioned in section 3411 of the Revised Statutes.

On the ninth of May, 1874, Hefner filed his first answer to the injunc-
tion sued out by Hesse and Vergez, denied their allegations, and prayed
that they and the sureties on their injunction bond be condemned *in
solido* to pay him twenty per cent on the amount of the enjoined execu-
tion, and, besides, two hundred and fifty dollars as special damages for
attorney's fees.

On the seventh of June, 1875, Hefner filed a supplemental answer, in
which he avers that Hesse and Vergez had then no property left and
out of which his claim could be realized; that, by the effects of their in-
junction, he has lost the whole of his judgment; and that in addition to
the damages he claims in his first answer, the said Hesse and Vergez
and the sureties on their bond should be condemned to pay him an
amount equal to that which he contends he has lost.

The counsel representing Hesse and Vergez excepted to that supple-
mental answer; but, as they have not urged this exception in this court,
we are authorized to believe that they do not rely upon it, and we pass
it without further notice.

This is the abridged history of this disastrous case. The pursued
debtors are ruined, the pursuing creditor is left with an onerous judg-
ment and his recourse against the sureties on two bonds.

From the printed arguments of the parties' counsel we conclude: That
those of Hefner have abandoned their demand for an amount equal to
the enjoined judgment, and under the evidence adduced it was well that
they did, for they have not proven that their judgment is lost, much

less that it was lost in consequence of the injunction. Without establishing those facts, they can not recover against the sureties on the bond, and as damages, the amount of the judgment. 3 An. 126.

Those representing Hesse and Vergez have abandoned all but one of the grounds on which they based their injunction of the seventeenth of November, 1873. The grounds so abandoned were certainly untenable. The only one they now insist upon is "that the three sheriffs hereinbefore mentioned proceeded at once to seize immovable property before exhausting the movable effects of defendants in execution."

Under the pleadings two principal questions are submitted for our consideration:

First—Were the seizures of Hefner arbitrary and excessive, and, if they were, what remedy should have been resorted to by the seized debtors?

Second—Is the sheriff bound, under all circumstances, to first seize the debtor's movables?

First—Under the evidence, as found in the transcript, it is not an easy task to decide whether the seizures complained of were or were not excessive. The value of the movables seized is not established, and, though the owners swore that the whole of the property then under seizure was worth one hundred thousand dollars, and had cost them three times that amount, the judge of the lower court did not reduce the seizures, but merely ordered the property seized to be released on defendants furnishing bond in the sum of eight thousand dollars.

Hesse and Vergez have sued out the injunction, and, to succeed, they had to verify their allegations. They have not done so to our satisfaction. We believe, as they state, that the value of the property seized was considerable, but was said property free from liens and mortgages? This they have failed to show, and their own admission is that all they owned and possessed has been sold, and the price realized has been insufficient to pay their creditors.

The mandate of the law is: "The sheriff shall seize the property of the debtor to a sufficient amount to discharge the payment as well as interests and costs; he may even seize something beyond this amount, to pay the interest which may become due and the estimated costs of the seizure and the sale." C. P. 651.

This court, many years ago, commenting upon this provision of our Code, said: "The question presented for decision is one of considerable importance, but of little or no difficulty. It is whether a sheriff, who finds a defendant's property encumbered with general and special mortgages, can take the whole of it, or at least a sufficient part to satisfy the execution in his hands, over and above the lien by which it is affected,

or whether he is not compelled to seize an amount equal to that expressed in the writ without noticing the mortgages.

"The sheriff may seize to a greater amount than that mentioned in the execution. His duty is to act in such a way as to give effect, if possible, to the execution. In doing so he has as much right to notice mortgages on the property he is about to seize as he has the right to notice that an object surrendered to him by the debtor is not his property; an adverse doctrine would render it impracticable to make the money from those who have granted mortgages and privileges." 1 N. S. 603, 604.

Can we presume that the three sheriffs to whom were directed the three writs already referred to have violated their duty and the law, or must we presume that they were informed or did themselves ascertain that the property they were instructed to seize was affected by mortgages and privileges superior in rank or otherwise to any right acquired by Hefner under his judgment? Unless the contrary was shown, we are constrained to believe and decide that each of said sheriffs acted in strict compliance with the law, and that they seized only such an amount of property as was sufficient to satisfy the writs which they held.

The district judge maintained the injunction of Hesse and Vergez in so far as it arrested the seizure of the immovables, and dissolved it as to the sugar and molasses levied upon. His decree to that effect was rendered on the seventeenth of June, 1876, more than two years after the date of the order releasing the whole of the property seized from Hesse and Vergez under the judgment of Hefner.

What, then, had become of said property? We have the admission of Hefner, corroborated by the admission of Hesse and Vergez, that, at the date of the aforesaid decree, there was not left a vestige of that property; that the whole of it had been taken under process or otherwise by the other creditors of those parties, and that, nevertheless, some of those creditors were but partially paid.

In presence of these unconnected facts, these legal presumptions, these unexplained admissions, these contradicted statements, can we sustain the injunction or any portion of the injunction applied for and obtained by Hesse and Vergez? There is not a particle of evidence establishing the value of the movables seized, not a declaration on which we can fix or approximate what it might have brought, if it had been sold, and what proportion of its price the creditor might have received. By that value alone would we have been able to measure the alleged injustice of the seizures, the pretended loss of the creditor.

Those seizures may have been made at a critical moment; they may have awakened the suspicions of the other creditors, alarmed the laborers employed on the seized plantations, frustrated the hopes of the

debtors, ruined them, and ruined their merciless creditor; but they were but the exercise of a right granted by the debtor himself, and, however harsh it may be, we can not limit or condemn the legitimate exercise of a right.

The fact that a seizure is excessive does not justify a resort to the writ of injunction. "If the debtor is of opinion that the sheriff has seized more property than would reasonably be thought necessary to discharge the judgment and costs, he may, on application to the judge who issued the writ, demand that an appraisement be made of said property." C. P. 652. The judge, on that application, "shall order that an appraisement be made of the same by two competent persons whom he shall name and swear for that purpose, and if he shall find by the appraisement that more property was taken than is necessary to satisfy the judgment, he shall reduce the seizure." In this case the seizure was not reduced, but, from the plantations to the most insignificant object, every article of property seized was released.

That unqualified release we condemn as irregular, and for two reasons:

First—Because it was granted *ex parte*, without notice to the creditor.

Second—Because, if excessive, the seizure should have been reduced, limited to specified effects, specified property, and the seized debtor authorized to retain the same on furnishing bond.

Without that notice, how can a creditor protect his interest and his rights against even the most unfounded application? How can he contradict the false or mistaken averments of such an application? How can he prove that the property seized is affected with prior mortgages, higher privileges than his own?

Without the prescribed appraisement, without a specification of what is to be entirely released and what retained subject to the seizure, how can the judge determine that the property seized is sufficient or insufficient to satisfy the creditor's claim?

Is such an application to be allowed on the naked, unsupported affidavit of interested parties—of debtors who, in almost every case, honestly or dishonestly, would not hesitate to swear that any seizure of their property was unjust, excessive, arbitrary; who, blinded by their interests or actuated by the sole intention of defeating or retarding the execution of a judgment, would use and abuse such an irresponsible proceeding? Assuredly not.

The power of the judge in regard to such applications is limited. He can reduce the amount of the property seized, but he can not fix that of the bond to be furnished by the seized debtor. The amount, the form, the condition of that bond, are fixed by law. It must be executed in favor of the plaintiff in execution, *in solido*, with one or more good and sufficient sureties domiciliated in the parish where the seizure was made, for

an amount one-half over and above the estimated value of the property seized, conditioned for the faithful delivery of the property at the time of the sale. R. S., section 3411.

When he furnishes such a bond, the defendant in execution is authorized to retain the property seized until the day of the sale. That bond does not release the seizure; it does not prevent the sheriff from advertising the sale. Its object is to avoid the expensive necessity of a keeper; to save the costs of a keeping. Its express condition is the delivery of the property seized on the day of the sale. If the debtor fails to so deliver, his bond—by that failure—acquires the effect of a twelve-months bond, and execution may issue thereon against the principal and the sureties. R. S., section 3411.

It would be premature to discuss, in this case, the nature and extent of the rights acquired by Hefner under his seizure and his debtor's bond, or the validity or invalidity of any subsequent seizure or sale of the already seized and bound property. If those rights were properly preserved, they could not have been superseded. The injunction merely suspended the executions, and it may be that, at this very hour, they have as much force as they had on the day they were issued. This we mention to show that as yet, and under the evidence, we can not take for granted, as Hefner contends, that his judgment is lost.

Second—Hesse and Vergez base their defense on article 646 of the Code of Practice. That article provides that " if the seizing creditor has no privilege or mortgage on the property of the debtor, the sheriff must commence by seizing the movable property; if there be no movables, he may seize the immovables, unless the debtor point out himself what property he wishes to have seized and sold first, provided the property thus pointed out be situated in the parish."

This article must be construed in connection with article 651, which commands that the sheriff shall seize a sufficient amount of property to discharge the judgment and the costs and interest due at and to accrue after the execution of the writ. In estimating that sufficient, that necessary amount, the sheriff may, and should, as held by this court, notice what prior rights, mortgages, and privileges exist on the property. 1 N. S. 603, 604.

When the debtor's movables are free from liens, when he has enough of such beyond the liens to discharge the judgment, there can be no doubt that the sheriff, unless he be ordered to seize mortgaged property, must commence by seizing movables. In this case, both movables and immovables have been levied upon, and, on the part of Hesse and Vergez, the principal cause of complaint is that the sheriff did not first seize and sell the contents of their store in Thibodaux.

Is their complaint founded in law ? On the seventeenth of November,

1873, the day on which they sued out their injunction, Hefner's judgment amounted, in principal and interest, to over five thousand dollars. The contents of the store was estimated by the witnesses at from forty-five hundred to eight thousand dollars, and sold on the seventh of February, 1874, for $888 55. It is true that, at that date, a part of it had been disposed of, but it is as true that, if sold under the execution of the thirteenth of November, 1873, the contents of that store, which then was affected by recorded privileges, would hardly have paid one-fourth of Hefner's judgment.

When the sheriff of Lafourche received the writ of *fieri facias*, he called on Mr. Hesse to point out what property he wished him to seize. Mr. Hesse refused to do so, and the sheriff then proceeded to seize, under instructions from Hefner's counsel, a plantation and the appurtenances thereon, subject to Hefner's judicial mortgage, and, besides, the movables mentioned and described in his notice, the value of which has not been established. From the recorder's certificate we find that the property in Lafourche was burdened with mortgages and privileges amounting to $12,861 67, not including interest.

In 3 R. R., pp. 153 and 154, this court said: "It is urged by counsel for defendant that the seizure was illegal, inasmuch as rights and credits can not be seized until after movables, slaves, and immovables, and that it is not shown that any attempt was made to seize any other property. To us it appears a sufficient answer to say, that whatever right the defendant had to point out property is lost if he allows the sheriff to execute the writ without exercising that right." C. P. 649.

Hesse and Vergez contend that the property seized was never advertised and that, therefore, they are still in time to point out property. We believe not; it is not the fact that the property seized has been advertised which concludes the debtor, but the fact that, when called upon to point out property, he refused to do so, allowed the writ to be executed, and, without exercising that right, resorted to an injunction.

In our opinion, that injunction should have been dissolved.

Two hundred and fifty dollars are claimed by Hefner as special damages for attorney's fees. That amount is as reasonable as it can be. The services claimed are shown by the record, and we are thus enabled, without any additional proof, to judge of their value. They have been rendered, and can not be disallowed.

Is Hefner entitled to any other damages? His debtors, we acknowledge, have mistaken their remedy, but was this injunction wanton and malicious; did they not honestly believe that they were exercising a legitimate right? The whole of this property, three plantations, mules, implements of husbandry, sugar, molasses, corn, hay, shingles, seed-cane, growing crops, and cord-wood, had been seized to satisfy a claim

of a little more than four thousand dollars; their prospects were baffled, their enterprise crushed, and this when they were striving to redeem their obligations and satisfy their creditors. They are liable for their mistake, but not to the extent contended for by Hefner.

We have examined and re-examined the transcript, opened and re-opened the counsel's brief, and we have not found, either in the transcript or the briefs, any evidence to legally convince us that Hefner's seizures were excessive, or his debtor's injunction absolutely vexatious. The evidence on both sides is vague, indefinite, incomplete. We have had to supply with presumptions the missing links of that evidence, and though they are sufficient to authorize a dissolution of the injunction, they are insufficient to justify the claim of Hefner for general damages.

Hefner's counsel have called our attention to the exception taken by them to the admission of Hector Vergez's testimony. Vergez is one of the parties to this suit. At the date of the second trial of this cause he was absent from and had left the parish of Lafourche, and the testimony given by him and reduced to writing on the first trial was properly admitted by the court on the new trial.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be and it is hereby annulled, avoided, and reversed; and, proceeding to render such judgment as should have been rendered below —

It is ordered, adjudged, and decreed that the injunction obtained by Simon Hesse and Hector Vergez, on the seventeenth of November, 1873, be and it is hereby dissolved, and that they, the said Hesse and Vergez, and A. Morilli, I. L. Vergez, and O. Crozier, their sureties on the injunction bond, be and they are hereby condemned in solido to pay to Augustus Hefner the sum of two hundred and fifty dollars, with costs in both courts.